Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
Katherine A. Rabago, State Bar No. PL-469471[1] (kar@arnslaw.com)
**THE ARNS LAW FIRM**
A Professional Corporation
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JESUS ROMERO and KEN BERNARDS, individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

vs.

AGRO RESEARCH INTERNATIONAL LLC; and DOES 1 to 100, inclusive,

Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR DAMAGES**

1. Violation of Cal. Bus. Prof. Code §§ 17500, *et seq*.
2. Violation of Cal. Bus. Prof. Code §§ 17200, *et seq*.
3. Violation of Cal. Civ. Code §§ 1750, *et seq*.
4. Fraud—Intentional Misrepresentation

DEMAND FOR JURY TRIAL

[1] Provisionally licensed pursuant to California Rules of Court 9.49, under the supervision of Robert S. Arns.



Plaintiffs, KEN BERNARDS and JESUS ROMERO, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), bring this action against Defendants Agro Research International LLC ("ARI") and Does 1 through 100 (collectively, "Defendants"). Plaintiffs allege, upon information and belief, the investigation of their counsel, and the facts that are a matter of public record, as follows:

1. Plaintiffs bring this action to obtain restitution and damages, as well as injunctive and other relief, individually and on behalf of a proposed class defined below ("the Class") against Defendants, which Plaintiffs contend falsely advertised and misrepresented products sold to Plaintiffs.

2. As alleged herein, Plaintiffs are purchasers of the agricultural herbicide and fertilizer product titled Weed Slayer [hereinafter "Weed Slayer" or "Weed Slayer/Agro Gold WS"], manufactured and distributed by Defendants. Weed Slayer is a two-part mixture: Part A is the herbicide and Part B is a biological surfactant that enables the herbicide to penetrate through the leaf. Part B, also called Agro Gold WS, is advertised as an organic biological amendment containing nothing more than soil-enhancing bacteria and water. In reality, however, Agro Gold WS contains the synthetic herbicides glyphosate and diquat, both of which are prohibited for use in organic production.

3. Prior to Plaintiffs' purchases of Weed Slayer/Agro Gold WS, Defendants represented to Plaintiffs that this product was natural, organic, suitable for use on organic crops, and contained clove essential oil as its only active ingredient. These representations were false.

4. Due to Defendants' false and misleading advertising and statements, Plaintiffs and members of the Class were induced to purchase a non-organic, synthetic herbicide that was far inferior in value than that which had been promised.

5. Plaintiffs assert claims individually and collectively under the California False Advertising Law, Business & Professions Code sections 17500, *et seq*.; the Unfair Competition Law, Business & Professions Code sections 17200, *et seq*.; the Consumer Legal Remedies Act, Civil Code sections 1750, *et seq*.; and for common law fraud.

6. Plaintiffs seek actual and compensatory damages, civil penalties, punitive damages,



THE ARNS LAW FIRM A PROFESSIONAL CORPORATION

restitution, equitable relief, costs and expenses of litigation including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

**JURISDICTION AND VENUE**

7. CAFA Jurisdiction: This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). This action is a class action as defined by 28 U.S.C. §1332(d)(1)(B). The complaint is brought as a "Class Action" and Plaintiffs bring it "individually and on behalf of the proposed classes."

- Minimal Diversity: As alleged herein, Defendant Agro Research International LLC is a Florida corporation with its principal place of business at 703 Camarague Place #203 in Lake Mary, Florida. Additionally, Plaintiffs are residents of California and the proposed class consists of purchasers of Weed Slayer/Agro Gold WS.
- Amount in Controversy Exceeds $5 million: The amount in controversy in the underlying dispute exceeds $5 million, thus satisfying 28 U.S.C. § 1332(d)(2). Plaintiffs believe there to be more than 100 members of the proposed class. Plaintiffs allege that they and the proposed class have been fraudulently misled and intentionally misrepresented to in the course of the advertising and sale of Weed Slayer/Agro Gold WS to Plaintiffs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, Defendants engage and perform business activities in and throughout the State of California, including Napa County; and Class members entered into agreements to purchase Defendants' products while in Napa County.

**PARTIES**

9. Plaintiff KEN BERNARDS is, and at all times relevant herein was, a resident of Napa County, California. Plaintiff lives and works in Napa County where he makes organic wines and grows organic grapes. Plaintiff Bernards purchased Weed Slayer/Agro Gold WS on or around February 2020 based on the misrepresentations discussed herein. On or around February 2020, Plaintiff began the application of Weed Slayer/Agro Gold WS to his grapes up until January 2021,

when he stopped its use based on the discovery of its synthetic ingredients. Had Weed Slayer/Agro Gold WS not been represented as organic, Plaintiff Bernards would not have purchased it because he adheres to the organic production of wines and grapes, and markets them as such. Plaintiff Bernards has suffered harm to his reputation and sales because, as a result of the misrepresentations made to him, he has unknowingly been marketing his wines and grapes as organic when in fact they are not. Customers purchase his wines based on the representation that they are organic, and now that Plaintiff Bernards can no longer make this representation he will suffer loss to his reputation and client base.

10. Plaintiff JESUS ROMERO is, and at all times relevant herein was, a resident of Napa County, California. Plaintiff lives and works in Napa County where he manages multiple vineyards on which grapes are grown for wine consumption. Plaintiff Romero purchased Weed Slayer/Agro Gold WS on or around early spring 2020 in reliance on the misrepresentations discussed herein.

11. Defendant Agro Research International LLC ("ARI") is a Florida corporation with its principal place of business at 703 Camarague Place #203 in Lake Mary, Florida. ARI maintains substantial ongoing business operations throughout California, including in Napa County, and is in the business of selling commercial agricultural products.

12. The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct

13. On information and belief, at all times herein mentioned, each Defendant was the agent, partner, joint venturer, representative, or employee of the remaining Defendants, and was acting within the course and scope of such agency, partnership, joint venture, or employment. In engaging in the conduct described below, the Defendants were all acting with the express or implied knowledge, consent, authorization, approval, or ratification of their co-Defendants.

**CLASS ACTION ALLEGATIONS**

14. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure,



THE ARNS LAW FIRM A PROFESSIONAL CORPORATION

rule 23, on behalf of themselves and the following Class:

> Any person who purchased Weed Slayer, Agro Gold WS, or both, in California, at any time from July 27, 2015 to the present.

Plaintiff Bernards further brings this action on behalf of himself and the following Sub-class:

> Commercial Loss Sub-Class: Members of the Class who suffered an injury to a commercial interest in reputation or sales as a result of their use of their use of Weed Slayer, Agro Gold WS, or both.

Plaintiffs reserve the right to amend these Class and Sub-class definitions if discovery or further investigation demonstrates that the Class or Sub-class should be expanded or otherwise modified.

15. The members of the Class are so numerous that joinder of all members would be impracticable.

16. There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including, without limitation:

- Whether Defendant marketed and sold Weed Slayer/Agro Gold WS as an organic product suitable for use in organic production when, in reality, it contained the synthetic herbicides glyphosate and diquat;
- Whether Defendant marketed and sold Weed Slayer/Agro Gold WS as containing only a natural active ingredient when, in reality, it contained the synthetic herbicides glyphosate and diquat;
- Whether the manner in which Defendants advertised and marketed Weed Slayer/Agro Gold WS was likely to deceive consumers;
- Whether Defendants' conduct constitutes an unfair or fraudulent business act or practice;
- Whether Defendant's conduct otherwise violates California law; and
- Whether, as a result of Defendants' conduct, Plaintiffs are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

17. Plaintiffs bring claims that are typical of the claims of the members of the Class. Plaintiffs have no interests antagonistic to those of the Class and are not subject to any unique defenses.



THE ARNS LAW FIRM A PROFESSIONAL CORPORATION

18. Plaintiffs will fairly and adequately protect the interests of all members of the Class and have retained attorneys experienced in class action and complex litigation.

19. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

- The Class is readily definable;
- Prosecution as a class action will eliminate the possibility of repetitious litigation; and
- It is economically impractical for any or all of the members of the Class to prosecute individual actions;
- A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

20. Plaintiffs do not anticipate any difficulty in the management of this litigation.

**FACTUAL ALLEGATIONS**

21. For decades, glyphosate was the herbicide of choice for commercial and home growers to eliminate weeds and support healthy plant and crop growth. Glyphosate, developed in the 1970s by Monsanto scientists, has since been marketed by Monsanto for agricultural use under the trade name Roundup.

22. In 2015, the World Health Organization classified glyphosate as "possibly carcinogenic to humans."

23. In 2018 and 2019 a series of high-profile lawsuits were filed, and jury verdicts were reached, against Roundup's manufacturer, Monsanto (and later, Bayer), relating to its failure to warn consumers of cancer risks posed by Roundup. In 2020, Bayer agreed to pay over $10 billion to settle approximately one hundred thousand cases against the company alleging health hazards related to the use of Roundup.

24. Following the Roundup litigation, cities and municipalities began to ban the use of glyphosate-based herbicides, and consumers began to seek out alternative products that did not contain glyphosate.

//



## Weed Slayer: A Purportedly Natural and Organic Alternative

25. Defendant Agro Research International advertises an organic alternative to popular synthetic herbicides, Weed Slayer. Defendant's website advertises Weed Slayer as a two-part herbicide, containing one-part herbicide and one-part "biological soap" that must be added to the herbicide in order to assist the herbicide in penetrating through the leaf.

Weed Slayer® is a non-selective herbicide which controls grass weeds and is ideal for public areas, sports fields and school grounds.

Formulation and Packaging

Weed Slayer® comes in a co-pack. Part A consist of Eugenol ad molasses, part B is a proprietary biological soap which must be mixed with the Eugenol in order for it to penetrate through the leaf.

Tank Mix

Performance

Precautions

26. The product instructions direct the consumer to mix Part A (Weed Slayer) and Part B (Agro Gold WS) in specified amounts and dilute with water before spraying on the desired area.

**DIRECTIONS FOR USE:**
Mix **32 ounces** of **PART A per acre** and **32 ounces** of **PART B per acre** into 25 gallons and up to 50 gallons of water per acre. **Make sure to agitate** and empty every jug thoroughly. When applying , make sure to protect all desirable crop or plants from overspray as **WEED SLAYER** will affect them. **SHAKE BEFORE USE**.

27. The product label for Part A, Weed Slayer states: "Weed Slayer is a unique broad spectrum natural herbicide made from Eugenol, an essential oil of Clove, and molasses." The label lists the Active Ingredients as 6.0% Eugenol and the Inert Ingredients as 94.0% water and molasses. Defendant's website repeats the same information.

28. The product label for Part B, Agro Gold WS, states that the product is a biological amendment containing bacteria and 65% water. The label does not disclose any additional active or inactive ingredients. Part B is advertised as a biological amendment, soap, surfactant, or adjuvant, that is, an additive intended to increase the herbicide's effectiveness. A video posted on Agro Research's Weed Slayer webpage states that Part B, Agro Gold WS, "drives the Eugenol [in



Part A] into the plant."

**Agro Research Falsely and Misleadingly Advertised Weed Slayer as Organic and Natural**

29. Defendant's website advertises its products as "products for organic crops."

Products for Organic Crops

Biologicals and Soil Amendments
Improve your soil chemistry and root vigor
LEARN MORE

Crop Protection
Protect your investment and the environment
LEARN MORE

Nutrients
Assist crop development with natural nutrients
LEARN MORE

30. The Weed Slayer/Agro Gold WS product labels state that the product is certified organic.

31. Defendant's website makes the following statements about Weed Slayer:

- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."
- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."
- "Weed Slayer is made of Organic Eugenol and Molasses."

32. Defendant's website further advertises its Agro Gold product line as "biological amendments containing beneficial bacteria recommended for all crops."

33. As discussed above, the product labels for Weed Slayer/Agro Gold WS list the only Active Ingredient as the clove oil-derived Eugenol.

34. Contrary to Defendants' advertising and product labelling, however, Weed Slayer/Agro Gold WS contains two synthetic, non-organic Active Ingredients in addition to the Eugenol: glyphosate and diquat. Both chemicals are contained in Part B, Agro Gold WS.

//



**Agro Research Failed to Disclose the Presence of Two Synthetic, Non-Organic Ingredients in Weed Slayer: Glyphosate and Diquat**

35. On December 4, 2020, the California Department of Food and Agriculture (CDFA) announced that lab analysis of Agro Gold WS "detected the presence of Diquat and Glyphosate, which are substances prohibited by the U.S. Department of Agriculture (USDA) National Organic Program for use in organic production."

36. Accordingly, the CDFA issued a Stop Use Notice and Statewide Quarantine and Removal from Sale Order for Agro Gold WS to all organic operations in California. The Notice and Order states "[s]ale and use of this product thus poses a public health risk because the product was found to contain herbicides not disclosed on its label" and orders all organic operations in possession of Agro Gold WS to hold the product and contact the CDFA for further instructions.

37. Glyphosate and diquat are both synthetic, non-natural pesticides prohibited from use in organic production under 7 CFR §205.105.

**FIRST CAUSE OF ACTION**
False Advertising
(Bus. & Prof. Code, §§ 17500, *et seq.*)

38. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

39. Business and Professions Code sections 17500, *et seq.* prohibit the publication of any statement concerning the sale of goods that is untrue or misleading. Defendants' conduct, as described above, constitutes the publication of untrue and misleading statements concerning the sale of Weed Slayer/Agro Gold WS.

40. Defendants engaged in the advertising and marketing to the public and offered for sale Weed Slayer/Agro Gold WS throughout California.

41. Defendant engaged in the advertising and marketing alleged herein with the intent to induce Plaintiffs and the Class to purchase Weed Slayer/Agro Gold WS.

42. Defendants' advertisements and marketing representations regarding Weed Slayer/Agro Gold WS were false, misleading, and likely to deceive the public.

43. Specifically, Defendants made the following misrepresentations:

- Defendants' products are "products for organic crops."



THE ARNS LAW FIRM A PROFESSIONAL CORPORATION

- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."
- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."
- "Weed Slayer is made of Organic Eugenol and Molasses."
- The products in Defendants' Agro Gold product line are "biological amendments containing beneficial bacteria recommended for all crops."
- Agro Gold WS contains only bacteria and 65% water.

44. In reality, Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat, both of which are prohibited under federal law for use in organic production.

45. At the time Defendant made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue and misleading.

46. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

47. Plaintiffs, on behalf of themselves and on behalf of the Class, seek restitution, injunctive relief, and all other relief allowable under the law.

**SECOND CAUSE OF ACTION**
Unlawful, Unfair, and Fraudulent Business Acts and Practices
(Bus. & Prof. Code, §§ 17200, *et seq*.)

48. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

49. Business & Professions Code sections 17200 *et seq*. prohibits acts of "unfair competition" which is defined by Business & Professions Code section 17200 as including "any unlawful, unfair or fraudulent business act or practice."

**Unlawful Business Acts and Practices**

50. Defendants' conduct, as described above, constitutes unlawful business acts and practices.

51. Defendants, by the conduct described above, have violated and continue to violate Business & Professions Code section 17200's prohibition against engaging in "unlawful" business acts or practices by violating Cal. Civil Code §§ 1750, *et seq*; and by committing common law fraud, as

discussed in the relevant causes of action herein.

52. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

53. As a result of Defendants' conduct, Plaintiffs are entitled to restitution of monies paid for the purchase of Weed Slayer/Agro Gold WS.

54. Plaintiffs also seek on behalf of the general public an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

**Unfair Business Acts and Practices**

55. Defendants' deceptive acts and practices, as described above, constitute unfair business practices within the meaning of Business & Professions Code, sections 17200, *et seq*.

56. Plaintiffs and other members of the class suffered a substantial injury in fact resulting in the loss of money or property by virtue of Defendants' conduct.

57. Defendant's conduct does not benefit consumers or competition. Indeed, the injury to consumers and competition is substantial. As described above, Defendant deceptively marketed and sold Weed Slayer/Agro Gold WS as a natural, organic herbicide that contained only clove essential oil as its active ingredient. These representations induced Plaintiffs and the class to purchase and use the product. In reality, however, the product contained glyphosate and diquat, both synthetic herbicides prohibited by federal law for use in organic production.

58. Plaintiffs and class members could not have reasonably avoided the injury each of them suffered.

59. The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and offends the public policy established by the State of California, which, among other things, seeks to protect the reasonable expectations of consumers concerning the nature, extent and quality of their care coverage.

60. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far



inferior in value to that which was advertised and marketed by Defendants.

61. As a result of Defendants' conduct, Plaintiffs are entitled to restitution of monies paid for the purchase of Weed Slayer/Agro Gold WS.

62. Plaintiffs also seek on behalf of the general public an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

**Fraudulent Business Acts and Practices**

63. Defendants' conduct as set forth herein constitutes fraudulent business practices under Business & Professions Code, sections 17200, *et seq*.

64. As described above, Defendant made uniform misleading and fraudulent communications regarding the organic and natural characteristics of Weed Slayer/Agro Gold WS. Specifically, these fraudulent statements were located on the product labels and Defendant ARI's website.

65. As described above, Defendants made the following misrepresentations:

- Defendants' products are "products for organic crops."
- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."
- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."
- "Weed Slayer is made of Organic Eugenol and Molasses."
- The products in Defendants' Agro Gold product line are "biological amendments containing beneficial bacteria recommended for all crops."
- Agro Gold WS contains only bacteria and 65% water.

66. In reality, Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat, both of which are prohibited under federal law for use in organic production.

67. Defendant had a duty to disclose that Weed Slayer/Agro Gold WS was not organic, not suitable for use on organic crops, and contained the synthetic, non-natural herbicides glyphosate and diquat for three separate reason: (1) Defendants had exclusive knowledge of the active ingredients in Weed Slayer/Agro Gold WS; (2) Defendant actively concealed that Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat; and (3) Defendant made partial representations to Plaintiffs regarding the active ingredients in Weed



Slayer/Agro Gold WS but failed to disclose all active ingredients.

68. Said communications were made with actual knowledge of their falsity or with reckless disregard or deliberate ignorance of whether or not they were false.

69. Defendants' misleading and fraudulent communications were and are likely to deceive reasonable California consumers, leading them to believe they are purchasing an organic, natural herbicide that did not contain glyphosate or diquat and was suitable for use in organic production.

70. These communications regarded a material aspect of and were a substantial factor leading Plaintiffs to purchase Weed Slayer/Agro Gold WS from Defendants.

71. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

72. As a result of Defendants' conduct, Plaintiffs are entitled to restitution of monies paid for the purchase of Weed Slayer/Agro Gold WS.

73. Plaintiffs also seek on behalf of the general public an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

**THIRD CAUSE OF ACTION**
Consumer Legal Remedies Act
(Cal. Civ. Code §§ 1750, *et seq*.)

74. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

75. The California Consumer Legal Remedies Act applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

76. Plaintiffs and members of the Class are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

77. Defendants' Weed Slayer/Agro Gold WS agricultural product is a "good" within the meaning of Cal. Civ. Code § 1761(a).

78. Defendants have violated the CLRA by, *inter alia*:

- Misrepresenting the source, approval, or certification of their non-organic, synthetic



THE ARNS LAW FIRM A PROFESSIONAL CORPORATION

product Weed Slayer/Agro Gold WS;

- Misrepresenting that their non-organic, synthetic products have characteristics and benefits they do not have;
- Misrepresenting that their non-organic, synthetic products are of a particular standard, quality, or grade when they are not;
- Advertising their non-organic, synthetic product line with an in intent not to sell them as advertised.

79. As described above, Defendants materially misrepresented the natural and organic nature of Weed Slayer/Agro Gold WS on product labelling and in marketing information online.

80. Defendants failed to disclose and intentionally omitted the material fact that its product was not organic and did not contain only natural active ingredients but included the synthetic herbicides glyphosate and diquat—both of which are prohibited for use in organic production.

81. Had Defendants not affirmatively misrepresented its product to Plaintiffs and the Class, they would not have purchased Weed Slayer/Agro Gold WS.

82. Defendants' misrepresentations and material omissions, and Defendants' publication of these misrepresentations and material omissions, regarding the nature and characteristics of Weed Slayer/Agro Gold WS constitute unfair, deceptive, and misleading business practices in violation of Cal. Civ. Code § 1770(a).

83. As a direct and proximate result of Defendants' violation of Cal. Civ. Code § 1750, *et seq*., Plaintiffs and other Class members have suffered concrete and identifiable harm.

84. Defendants' deceptive acts and omissions occurred in the course of selling a consumer product and have occurred up to the present. Accordingly, Plaintiffs, on behalf of themselves and the Class seek an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

**FOURTH CAUSE OF ACTION**
Fraud—Intentional Misrepresentation

85. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.



86. As described above, Defendant made uniform misleading and fraudulent communications regarding the organic and natural characteristics of Weed Slayer/Agro Gold WS. Specifically, these fraudulent statements were located on the product labels and Defendant ARI's website.

87. As described above, Defendants made the following misrepresentations:

- Defendants' products are "products for organic crops."
- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."
- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."
- "Weed Slayer is made of Organic Eugenol and Molasses."
- The products in Defendants' Agro Gold product line are "biological amendments containing beneficial bacteria recommended for all crops."
- Agro Gold WS contains only bacteria and 65% water.

88. In reality, Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat, both of which are prohibited under federal law for use in organic production.

89. Defendant had a duty to disclose that Weed Slayer/Agro Gold WS was not organic, not suitable for use on organic crops, and contained the synthetic, non-natural herbicides glyphosate and diquat for three separate reason: (1) Defendants had exclusive knowledge of the active ingredients in Weed Slayer/Agro Gold WS; (2) Defendant actively concealed that Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat; and (3) Defendant made partial representations to Plaintiffs regarding the active ingredients in Weed Slayer/Agro Gold WS but failed to disclose all active ingredients.

90. Said communications were made with actual knowledge of their falsity or with reckless disregard or deliberate ignorance of whether or not they were false.

91. Defendants' misleading and fraudulent communications were and are likely to deceive reasonable California consumers, leading them to believe they are purchasing an organic, natural herbicide that did not contain glyphosate or diquat and was suitable for use in organic production.

92. These communications regarded a material aspect of and were a substantial factor leading Plaintiffs to purchase Weed Slayer/Agro Gold WS from Defendants.

93. Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants. Further, Plaintiffs suffered harm to their reputations as organic grape farmers for the use of a product that was not compliant with these practices.

94. Plaintiff Bernards and members of the Commercial Loss Sub-Class also suffered harm to their businesses or reputation as a result of Defendants' fraud because they can no longer market or sell products on which they have used Weed Slayer/Agro Gold WS as "organic."

95. As a result of Defendants' conduct, Plaintiffs and the Class are entitled to all monetary and other damages permitted under the law, including, but not limited to restitution of monies paid to purchase Weed Slayer/Agro Gold WS and compensatory damages for resulting business harm, including loss of sales and harm to reputation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, pray for judgment against Defendants as follows:

A. An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B. For actual and compensatory damages according to proof pursuant to all applicable laws and regulations;

C. For restitution and disgorgement to the extent permitted by applicable law;

D. For an order enjoining Defendants from continuing to engage in the conduct described herein;

E. For civil and statutory penalties available under applicable law;

F. For pre-judgment and post-judgment interest;

G. For treble damages available under applicable law;

H. For punitive damages;

I. For an award of attorneys' fees, costs and expenses as authorized by applicable law;

J. For such other and further relief as this Court may deem just and proper; and

K. For trial by jury on all causes of action so triable.

Dated: January 21, 2021

Robert S. Arns
Jonathan E. Davis
Shounak S. Dharap
Katherine A. Rabago
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888

